IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| THOMAS B. ATKINSON III, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-08-375-S-EJL |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| LYNN GUYER, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court in this habeas corpus action is Respondent's Motion for Summary Dismissal (Docket No. 11).  Petitioner has been sent the Notice to Pro Se Litigants of the Summary Judgment Rule Requirement (Docket No. 12), and he has filed his Response (Docket No. 13).  Having reviewed the record in this case, the Court finds that oral argument is unnecessary and now enters the following Order.

## BACKGROUND

On March 20, 2002, Petitioner was convicted by jury of second degree kidnaping and misdemeanor battery, with a persistent violator enhancement, in the Fifth Judicial District Court in Twin Falls County, Idaho.  As a result of the persistent violator charge, and the jury's finding that Petitioner had committed his fifth felony, Petitioner was sentenced to a fixed life sentence on the kidnaping conviction.  He was also sentenced to

MEMORANDUM DECISION AND ORDER  1

six months for the battery offense.  (See State's Lodging A-1, pp. 49-82.)   On direct appeal, he challenged his persistent violator conviction and sentence.  The Idaho Court of Appeals affirmed the conviction and sentence.  Because Petitioner did not file a petition for review with the Idaho Supreme Court, the Idaho Court of Appeals issued its remittitur on December 31, 2003.  (See State's Lodgings B-1 to B-4.)

He next filed a post-conviction action in state court on February 27, 2004, which was summarily dismissed by the state district court  (State's Lodging, C-1.)  On appeal, the Idaho Court of Appeals affirmed the ruling on some of the claims, but reversed in part on others, concluding that the state district court failed to give Petitioner adequate notice that some of his claims were subject to dismissal.  On remand, the state district court provided Petitioner with an additional opportunity to respond to the notice of intent to dismiss, and then it dismissed his remaining claims.  (State's Lodging C-4.)  Petitioner did not file an appeal.  (*Id*.)

On October 6, 2006, Petitioner filed a Rule 35 motion alleging that his sentence was illegal.  His motion was denied, and the Idaho Court of Appeals affirmed denial of the motion on October 10, 2007.  Petitioner did not file a petition for review with the Idaho Supreme Court, and, therefore, the Idaho Court of Appeals issued its remittitur on November 6, 2007.  (See State's Lodgings E-1 to E-5.)

On January 7, 2007, Petitioner filed another petition for post-conviction relief. The state district court dismissed the petition, and then later denied Petitioner's motion for relief from the order dismissing the petition on September 26, 2007.  Nothing further

MEMORANDUM DECISION AND ORDER  2

was filed in state court.  (See State's Lodgings F-1 to F-6.)

## RESPONDENT'S MOTION TO DISMISS

In the Motion to Dismiss, Respondent contends that Petitioner's claims are both untimely and procedurally defaulted.  Petitioner admits that these allegations are likely true, but argues that he was kept in segregation for the majority of the time period during which he was trying to exhaust his state court remedies and that he had no legal knowledge or legal assistance.

### A.    Statute of Limitations

The Petition in this case is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), enacted in 1996.  Under AEDPA, petitioners have a one-year statute of limitations period within which to file a federal habeas corpus petition.  The one-year period usually begins to run from the date the state court judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).[1]

The statute provides tolling (stopping) of the one-year period for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. §

_____

[1]  If a direct appeal was filed, the one-year statute of limitation begins to run on the expiration of the 90-day period "within which [a petitioner] could have filed a petition for a writ of certiorari from the United States Supreme Court" following direct appeal, whether or not one was filed.  *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir.1999).  The additional 90-day certiorari period, however, does **not** apply to post-conviction relief actions.  *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999).

MEMORANDUM DECISION AND ORDER  3

2244(d)(2).  Thus, to the extent that a petitioner properly filed an application for post-conviction relief in state court, or other collateral review, the time that the application was pending in state court will not count toward the one-year limitations period.

If, after applying statutory tolling, a petitioner's petition is deemed untimely, a federal court can hear the claims only if the petitioner can establish that "equitable tolling" should be applied.  In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Court clarified that,"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."  *Id.* at 418.  In order to qualify for equitable tolling a circumstance must have *caused* Petitioner to be unable to file his federal Petition in time.  The petitioner bears the burden of showing his own diligence and of bringing forward facts to establish a basis for equitable tolling.  *Pace*, 544 U.S. at 418; *United States v. Marolf*, 173 F.3d 1213, 1318, no. 3 (9th Cir. 1999).  The Ninth Circuit recently reiterated that "the threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule."  *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal citation omitted).

The Ninth Circuit has suggested that there may be an actual innocence exception to the one-year statute of limitations.  *See Majoy v. Roe*, 296 F.3d 770 (9th Cir. 2002) (remanding to the district court to determine whether the petitioner had established a claim of actual innocence, and if so, to next decide "what consequence such a finding has with respect to AEDPA's one-year statute of limitations").  *Majoy* indicates that district

MEMORANDUM DECISION AND ORDER  4

courts should first consider whether a petitioner is actually innocent before deciding if an actual innocence exception to the statute of limitation exists. *Id.* at 777-78.

Here, Petitioner's judgment of conviction was entered on August 19, 2002. Thereafter, he filed a direct appeal. The Idaho Court of Appeals heard the appeal and affirmed the conviction and sentence on December 9, 2003. (State's Lodging B-3.) Because Petitioner did not file a petition for review with the Idaho Supreme Court, the Idaho Court of Appeals issued its remittitur on December 31, 2003. (State's Lodging B-4.) Petitioner's federal statute of limitations then began running, because no state court action challenging the conviction or sentence was pending.[2]

The statute ran from December 31, 2003,[3] until February 26, 2004, a total of **58** days; it was tolled on February 27, 2004,[4] when Petitioner filed a post-conviction relief petition in state court. (State's Lodging C-1, p. 6.) The state district court dismissed the petition, and Petitioner filed an appeal. The appeal was heard by the Idaho Court of Appeals. The case was affirmed in part as to claims for which adequate notice of the grounds for dismissal was given to Petitioner, reversed in part as to claims for which

---

[2] An additional 90-day for filing a petition for writ of certiorari with the United States Supreme Court does not apply if the petitioner failed to present his claims to the highest state court, but instead stopped at an intermediate court, from which a petition for writ of certiorari with the United States Supreme Court could not be filed. *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001).

[3] The statute of limitations is calculated from "the date on which the judgment became final. . . ." 28 U.S.C. § 2244(d)(1)(A).

[4] Statutory tolling is in effect during all the time a proper post-judgment action is "pending."

inadequate notice of dismissal was given, and remanded for further proceedings.  (State's Lodging D-5, pp. 1-9.)  No petition for review with the Idaho Supreme Court was filed, and the remittitur issued on April 27, 2006.  However, because the case was remanded, the federal statute remained tolled.

Upon remand, the state district court entered a notice of intent to dismiss the remaining claims, and on August 3, 2006, the claims were summarily dismissed.  (State's Lodging C-4.)  Petitioner did not file an appeal, and so the dismissal became final 42 days later, on September 14, 2006.[5]  Therefore, Petitioner's federal statute of limitations began running again from September 15, 2006, the date the case was no longer pending, until October 29, 2006, the day before Petitioner filed a Rule 35 motion to correct an illegal sentence, a total of **45** days.

The statute of limitations was tolled by the Rule 35 filing between October 30, 2006, and November 6, 2007, when the Idaho Court of Appeals issued its remittitur after affirming the state district court's decision to dismiss the Rule 35 motion.  (State's Lodgings E-1 through E-5.)   The federal statute of limitations began running again on November 7, 2007, when the action was no longer pending.[6]  The statute ran from

---

[5]  Idaho grants a convicted criminal defendant 42 days from the date an order relinquishing judgment is entered in which to file an appeal.  *State v. Repici*, 835 P.2d 1349, 1350 (Idaho Ct. App. 1992) (citing I.A.R. 14(a)).

[6]  Petitioner also filed a second post-conviction action on January 6, 2007.  That case was completed in the state district court on September 26, 2007, and because Petitioner did not file an appeal, and the order of dismissal became final 42 days later, on November 7, 2007. Because this time period overlaps the pendency of the Rule 35 motion, it does not add any tolling time for purposes of the federal statute of limitations.  (See State's Lodgings F-1 through F-6.)

MEMORANDUM DECISION AND ORDER  6

November 7, 2007, until September 3, 2008, a total of **302** days.  On September 4, 2008, Petitioner's federal petition was filed (mailbox rule).

To summarize, the Court finds that under the most generous calculation, Petitioner had three time periods during which the habeas corpus one-year statute of limitations was running while no state court action was pending (58 days + 45 days + 302 days = 405 days).  Petitioner had only 365 days to file, and, thus, he filed 40 days too late.  As noted above, Petitioner does not contend that his Petition was timely filed.

Rather, in his response, Petitioner sets forth the following grounds for equitable tolling.  First, he alleges that since he has been housed at the Idaho State Correctional Institution (ISCI), he has had to rely upon the aid of other inmates to file his appeals.  He asserts that while he had counsel appointed for him at some relevant points in time, he had little contact with them.  He also alleges that he has "no real knowledge of how it all works."  (Response, p. 2, Docket No. 13.)  In addition, he says he has spent most of the past six years in segregation, and had no way to find out how the system works because the law clerks are not permitted to give inmates legal advice.  Therefore, he asserts, "if you don't know the topic of study or what book you need to learn it, you won't get any help."  (*Id.*)  Petitioner also provides a lengthy affidavit about the underlying facts of the case; it appears that he is attempting to assert actual innocence based on the affidavit.  (Affidavit of Petitioner, Docket No. 13-2.)

A pro se petitioner's "confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling."  *Waldron-Ramsey*, 556 F.3d at 1013 (citing

MEMORANDUM DECISION AND ORDER  7

*Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).  *See also  Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).  While the state appellate procedures and the federal habeas corpus procedures may be difficult for a layperson to navigate, the law does not provide that such circumstances are "extraordinary" to permit application of equitable tolling principles.  This Court cannot simply choose to hear the merits of Petitioner's case under the circumstances, as he suggests, but, rather, the Court is constrained to act within the bounds of the law set by the Constitution, Congress, the United States Supreme Court, and the United States Court of Appeals for the Ninth Circuit.

A review of applicable law shows that Petitioner is not entitled to equitable tolling. Petitioner's case is unlike *Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002), where the Ninth Circuit Court of Appeals remanded the petitioner's case for an evidentiary hearing to determine whether equitable tolling would apply during out-of-state incarceration periods when the petitioner was deprived of his own court records.  Petitioner's case is unlike *Lott* because he does not allege that he was denied access to his *own* court records. Rather, his claim is that he had limited access to legal materials, and, more particularly, that he did not know which legal materials he needed.

In *Ramirez v. Yates*, 571 F.3d 993 (9th Cir. 2009), the Court addressed a claim very similar to Petitioner's:

We have little difficulty determining that Ramirez is not entitled to

MEMORANDUM DECISION AND ORDER  8

equitable tolling from July 11, 2003 through October 1, 2003, simply
because he remained in administrative segregation and had limited access to
"the law library [and] copy machine." Ordinary prison limitations on
Ramirez's access to the law library and copier (quite unlike the denial
altogether of access to his personal legal papers) were neither "extraordinary" nor made it
"impossible" for him to file his petition in a timely manner. Given even the most common
day-to-day security restrictions in prison, concluding otherwise would permit the
exception to swallow the rule-according to Ramirez's theory, AEDPA's limitations period
would be tolled for the duration of any and every prisoner's stay in administrative
segregation, and likely under a far broader range of circumstances as well.

*Id*. at 998.

Here, Plaintiff's argument is not that he was unable to file court actions as a result

of being placed in segregation.  Rather, he argues that he was not able to discover the

legal process for exhausting his state court remedies because he could not read through

the resources at the prison's legal resources center to discover that a petition for review

with the Idaho Supreme Court could be filed after the Idaho Court of Appeals issued a

decision.  These very general allegations are not enough to provide a basis for finding that

"extraordinary circumstances" prevented Petitioner from filing his federal habeas corpus

action in time.  Whether he knew to file a petition for review in his state court cases is

only tangentially related to Petitioner's dilemma at hand–whether he filed his federal

habeas corpus petition on time.

Petitioner does not state that he ever requested a federal habeas corpus packet,

available in the prison legal resource center, or that he took any other steps to file his

federal petition in a timely manner.  The habeas corpus packet explains the statute of

limitations and exhaustion requirements, including the fact that the claims must be

MEMORANDUM DECISION AND ORDER  9

presented in a proper manner to the Idaho Supreme Court.  Petitioner does not state that

he ever requested a copy of the habeas corpus statute from the paralegal.  Petitioner does

not state that, at any during the six-year period when he was removed from segregation,

he visited the legal resource center and either attempted to discover the rule for filing

petitions for review or to discover how the federal statute of limitations was calculated.

Petitioner alleges that the prison paralegals do not provide legal advice, but that

"others" (apparently inmates) told him what to do.  Courts have uniformly held that

ignorance of the law is not an appropriate ground for equitable tolling.  *Fisher v. Johnson*,

174 F.3d 710, 714 (5th Cir. 1999); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999);

*Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000);  *Miller v. Marr*, 141 F.3d 976,

978 (10th Cir. 1998); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *Meiggs v.*

*Pinkens*, 2000 WL 101245 (D.Cal. 2000).  Similarly, in the procedural default context,

the Ninth Circuit has held that illiteracy,  borderline mental deficiency, and reliance upon

an incompetent jailhouse lawyer are not adequate grounds to show cause to excuse

procedural default.  *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988); *Hughes v.*

*Idaho State Bd. of Corrections*, 800 F.2d 905, 907-08 (9th Cir. 1986).  The Court

concludes that these factors do not constitute "extraordinary circumstances."

Finally, Petitioner waited 302 days, almost a year, between his last state court

filing and his federal filing.  In short, Petitioner did not provide any factual allegations

showing that he acted diligently regarding the legal resources that were available to him.

Therefore, his argument for tolling fails because he has shown neither diligence nor

MEMORANDUM DECISION AND ORDER  10

extraordinary circumstances.

Neither has Petitioner shown actual innocence.   As to a claim that a person is actually innocent of a conviction, the United States Supreme Court has noted that, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  A claim of actual innocence requires a colorable showing of factual innocence.  *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence."  *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

If a petitioner brings forward new evidence not presented at trial which tends to show his innocence, the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 329.  Upon such a showing, a petitioner may proceed with his claims, provided that his claim of actual innocence is accompanied by an assertion of nonharmless constitutional error at trial.  *Id.*, 513 U.S. at 316.

Here, Petitioner was charged with and convicted of first degree kidnaping for holding his girlfriend in a car against her will.  Petitioner now argues that the victim's ex-boyfriend told him that she was very vindictive person and that she had previously spent a year in a mental hospital for a nervous collapse.  (Petitioner's Response, p. 4, Docket No.

MEMORANDUM DECISION AND ORDER  11

13-2.)  Petitioner alleges that his trial counsel neglected to call the victim's ex-boyfriend as a witness at trial.  Petitioner also alleges that the victim and other witnesses (women he had previously dated) were lying when they accused him of abusing them in similar ways. Petitioner also states that, at the preliminary hearing, the victim stated she lost her job as a result of the kidnaping incident, but he later found out she had been fired from that job for coming to work late and had been fired from a previous job for lying to her employer. Petitioner asked his counsel to interview the owner of the car dealership where the victim worked, but his attorney did not do so.  Petitioner also alleges that he asked his attorney to check into the victim's mental health records, but his attorney told him he did not have the time.

Petitioner's actual innocence argument fails for several reasons.  First, while Petitioner has pointed to evidence not presented at trial, it is not reliable evidence under the law.  Petitioner has presented no affidavits from witnesses, no records, and no other documentation to support his claims.  In addition, the Court has reviewed the transcript of the trial proceedings, and finds that there is adequate corroborating evidence from witnesses, as well as physical evidence, that supports the victim's version of events and the verdict in Petitioner's case.  The Court concludes that Petitioner has failed to bring forward sufficient evidence to show he is actually innocent to excuse his untimely filing.

### B.    Procedural Default

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition.  28 U.S.C. § 2254(b).  To exhaust a

claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered to have been "procedurally defaulted." *Coleman,* 501 U.S. at 731. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked

MEMORANDUM DECISION AND ORDER 13

to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. As noted above, to satisfy this standard, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. at 404. As noted above, Petitioner has failed to show actual innocence because he has not produced any reliable evidence to support his contentions.

Here, even though Petitioner filed several state court actions, at no time did he file a petition for review with the Idaho Supreme Court. Therefore, all of his claims are procedurally defaulted. The Court has reviewed Petitioner's excuses for his late filing and procedural default, above, and essentially the same reasoning applied in the statute of limitations analysis applies here in the procedural default setting. Petitioner has provided mere generalities and relied on ignorance of the law to show that he was unable to pursue his claims through the Idaho Supreme Court. Petitioner has not pointed to any external element that caused him to be unable to file petitions for review. Nor has Petitioner shown actual innocence. As a result, his claims are procedurally defaulted, and no grounds for excusing procedural default have been presented or are apparent from the state court record.

MEMORANDUM DECISION AND ORDER  14

### C.    Merits

The Court has reviewed the merits of Petitioner's case and has determined that,

even if Petitioner had timely filed his Petition and properly exhausted his state court

remedies, his claims are subject to denial on the merits.  The AEDPA established a

deferential standard of review that a federal habeas court must apply to a state court's

resolution of constitutional claims.  The federal habeas court reviews the state court's

"last reasoned decision."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

Under the AEDPA, a federal court may grant habeas relief only if the state court's

adjudication on the merits:

>  1.    resulted in a decision that was contrary to, or involved an unreasonable
>         application of, clearly established Federal law, as determined by the
>         Supreme Court of the United States; or
>
>  2.    resulted in a decision that was based on an unreasonable determination of
>         the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" federal law when the state court applied a

rule of law different from the governing law set forth in United States Supreme Court

precedent, or when it confronted a set of facts that are materially indistinguishable from a

Supreme Court decision and nevertheless arrived at a different result.  *Williams v. Taylor*,

529 U.S. 362, 412-13 (2000).

A state court's decision is an "unreasonable application" of federal law when the

court was unreasonable in applying the governing legal principle to the facts of the case.

MEMORANDUM DECISION AND ORDER  15

*Id.* at 413.  A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision was incorrect; instead, the decision must be "objectively unreasonable."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent.  *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).  As a result, a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

1.    Ineffective Assistance of Trial Counsel

Petitioner brings the following ineffective assistance of counsel claims against his trial counsel (1) he failed to adequately investigate or prepare for trial; (2) he failed to secure the victim's mental health records; (3) he failed to impeach or adequately cross-examine the victim; (4) he inadequately cross-examined or impeached Witness Janet O'Crowley; (5) he failed to make a motion for acquittal; and (6) he failed to impeach Witness Sharlene Martin.

Petitioner's ineffective assistance of counsel claims are governed by *Strickland v.*

MEMORANDUM DECISION AND ORDER  16

*Washington*, 466 U.S. 668 (1984).  Under *Strickland*, an ineffective assistance claim has two components: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the petitioner.  *Id.* at 687.  To establish deficient performance, Petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 688.  To establish prejudice, Petitioner must demonstrate "a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  The court "must consider the totality of the evidence before the judge or jury."  *Id.* at 695.

In *Strickland*, the Supreme Court explained that "[j]udicial scrutiny of a counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  "Thus, even when a court is presented with an ineffective-assistance claim not subject to §2254(d)(1) deference, a defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (internal quotation marks and citations omitted).  For a petitioner to succeed in this habeas case, however, "he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly."

MEMORANDUM DECISION AND ORDER  17

*Id.* "Rather, [Petitioner] must show that the [Idaho] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.*

On appeal of Petitioner's post-conviction matter, the Idaho Court of Appeals determined that the district court properly summarily dismissed Petitioner's third, fourth, and sixth claims. (State's Lodging D-5, p. 8.) On counsel's failure to impeach or adequately cross-examine the victim, the state district court determined, "Petitioner has not shown what more counsel could or should have done, nor has he shown how the outcome of the trial may have been different." (State's Lodging C-1, p. 28.) On Petitioner's claim that trial counsel inadequately cross-examined or impeached Witness Janet O'Crowley, the state district court concluded: "While her testimony may have been in conflict with the victim's it has not been shown that Counsel's examination was inadequate or that there was any basis to impeach this witness and there is no reason to second-guess counsel as to his examination of the witness." (*Id.*, p. 29.) On Petitioner's claim that trial counsel failed to impeach Witness Sharlene Martin, the state district court decided: "Petitioner has not shown how the fact that the victim and Ms. Martin may have been co-workers would have impeached the witness or if it would, how the outcome of the trial would have been changed or how it prejudiced the defendant." (*Id.*, p. 30.)

This Court agrees that Petitioner has failed to support his claims. Nothing in the state court record or the record in this case indicates that Petitioner's counsel could have or should have acted differently in handling these witnesses at trial. Petitioner has offered only hearsay and speculation to support his claims. The Court concludes that Petitioner

MEMORANDUM DECISION AND ORDER  18

has failed to show that the state court decision is contrary to, or an unreasonable application of, *Strickland*. Nor is the state court decision based on an unreasonable determination of the facts in light of the evidence presented in state court. As a result, Petitioner's third, fourth, and sixth claim are subject to denial as failing to meet the standard for relief set forth in § 2254(d)(1) or (2).

Petitioner's other claims of ineffective assistance of trial counsel were remanded to the state district court for the purpose of giving Petitioner ample opportunity to respond to the court's notice of intent to dismiss. (State's Lodging D-5, pp.8-9.) After the state district court issued an order extending the time to respond to the notice of intent to dismiss, and after Petitioner filed a response, the court again dismissed the petition. (State's Lodging C-4.) Petitioner did not thereafter appeal the decision to the Idaho Court of Appeals.

Again, the Court concludes that, based on the record, Petitioner has failed to show either element of an ineffective assistance of counsel claim–that his trial counsel performed deficiently or that Petitioner's defense was prejudiced by the alleged errors. Petitioner's first claim is that trial counsel failed to adequately investigate or prepare for trial. The state court denied the claim because Petitioner failed to provide any specific facts to support this allegation. Particularly, the court noted that, while Petitioner stated that the victim's ex-boyfriend told Petitioner that the victim "had been abused by men in the past and that someone was going to pay," Petitioner failed to identify the ex-boyfriend and failed to provide any specific factual details to show relevance of the alleged

MEMORANDUM DECISION AND ORDER 19

statement to his case.   (State's Lodging C-1, pp. 26-27.)  In general, Petitioner has failed to show which preparations counsel should have made for trial, or how they would have been helpful for his case, especially in light of the strong evidence against him that was presented at trial.  The hearsay and speculation presented in support of Petitioner's actual innocence argument (Docket No. 13-2) are insufficient to show that actual evidence existed that was helpful to Petitioner's case.

Petitioner's second claim is that trial counsel failed to secure the victim's prior mental health records.  The state court denied the claim, reasoning, in part, "Petitioner has made no showing as to how, if at all, the victim's mental state one year prior to the event is in any way relevant to her mental state on July 7, 2001." (State's Lodging C-1, p. 27.) Petitioner has not presented the mental health records to any court; nor has he stated what the records contained or how it would have been helpful to his case in light of the corroborating evidence presented by other witnesses and the corresponding tangible evidence, such as the broken door lock, broken seatbelt, and clumps of hair found in the car (the victim testified that Petitioner had broken the seatbelt and lock and had pulled the victim's hair in the car to force her to keep driving; the victim's daughter testified she found the car in a condition consistent with Petitioner's testimony).  (State's Lodging A-2, pp. 13-136.)

Petitioner's fifth claim is that counsel failed to make a motion for acquittal.  The state court denied this claim because he made "no showing that each element of the crime was not proven beyond a reasonable doubt." (State's Lodging C-1, p. 29.)  Based on the

MEMORANDUM DECISION AND ORDER  20

record, this Court concludes that Petitioner has presented no evidence showing sufficient grounds existed for the filing of such a motion.

Based on the foregoing, the Court concludes that Petitioner has failed to show that the state court decision denying his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, *Strickland*.  Petitioner failed to show deficient performance or prejudice to his defense.  Nor are the state court decisions based on an unreasonable determination of the facts in light of the evidence presented in state court. As a result, Petitioner's first, second, and fifth claims are subject to denial as failing to meet the standard for relief set forth in § 2254(d)(1) or (2).

2.    Ineffective Assistance of Appellate Counsel

Petitioner's seventh claim is that his counsel failed to challenge the sufficiency of evidence on appeal.  The record reflects that there was sufficient evidence to support the conviction, as noted above.  Therefore, Petitioner has not shown deficient performance or prejudice to his case.  As a result, he has not shown that the state district court's order dismissing his post-conviction matter on remand after he had adequate notice and opportunity to respond was contrary to, or an unreasonable application of, *Strickland*. Nor has he shown that the decision is based on an unreasonable determination of the facts in light of the evidence presented in state court.   As a result, he is not entitled to relief under § 2254(d)(1) or (2).

3.    Sentence Challenge

Petitioner's final claim is that his Eighth Amendment rights were violated when

MEMORANDUM DECISION AND ORDER  21

the state district court pronounced an illegal sentence.  The basis of this claim is his

contention that the maximum sentence for second degree kidnaping is twenty-five (25)

years, but he was sentenced to fixed life as a result of the finding that he was a persistent

violator.  (State's Lodging E-1.)  Pursuant to Idaho Code § 19-2514, the sentencing court

is authorized by the legislature to enhance a kidnaping sentence to a term of up to life

upon a person's third felony conviction.  The Idaho Court of Appeals held that "[a]s the

jury found that this was Atkinson's fifth felony, the district court could lawfully impose a

fixed life sentence, and Atkinson's argument that his sentence is unlawful is frivolous."

(State's Lodging E-4.)

Petitioner's sentencing claim was not actually raised in state court.  Petitioner

apparently sought and was denied appointment of counsel to frame his persistent violator

issue as a constitutional issue. (See State's Lodging E-4, p. 3.)  There is not a state court

opinion addressing the constitutionality of Petitioner's sentence.  When the state court has

not reached the merits of a properly raised issue, the federal court reviews it de novo.

*Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Even on de novo review, however, Petitioner's sentencing claim fails.  Whether a

sentence violates the Eighth Amendment is determined by reference to controlling United

States Supreme Court precedent.  The Supreme Court has issued several opinions that

dictate the outcome of the cruel and unusual punishment claim.

In *Hutto v. Davis*, 454 U.S. 370, 372 (1982), the Supreme Court rejected

petitioner's cruel and unusual punishment claim based upon his argument that the

MEMORANDUM DECISION AND ORDER  22

sentence was disproportionate to the crime, noting that it had previously rejected the same

argument in *Rummel v. Estelle*, 445 U.S. 263 (1980).  In contrast, in *Solem v. Helm*, 463

U.S. 277 (1983), the United States Supreme Court held that the Eighth Amendment's

guarantee against cruel and unusual punishment requires that a sentence be proportionate

to the crime for which the defendant has been convicted.  There, the Court ruled that a

sentence of life without the possibility of parole was significantly disproportionate and

hence cruel and unusual punishment for the nonviolent offense of tendering a "no account

check" for $100.00, where the defendant's prior felonies were relatively minor, the

sentence was the most severe punishment in that state, and only one other state authorized

the same sentence for such a crime.

 *Solem* at first appears to be a departure from the reasoning in *Rummel*, because the

crimes in both are relatively minor offenses.  However, the *Solem* Court distinguished

*Rummel* by stating:

> Helm's present sentence is life imprisonment without possibility of
> parole.  Barring executive clemency, Helm will spend the rest of his life in
> the state penitentiary.  This sentence is far more severe than the life
> sentence we considered in *Rummel v. Estelle*.  Rummel was likely to have
> been eligible for parole within 12 years of his initial confinement, a fact on
> which the Court relied heavily.

463 U.S. at 297.  The *Solem* Court also observed that, "[o]utside the context of capital

punishment, successful challenges to the proportionality of particular  sentences [will be]

exceedingly rare."  *Id.*, 463 U.S. at 289-90.  The *Solem* Court identified three factors a

court should review in a proportionality analysis: "(i) the gravity of the offense and the

MEMORANDUM DECISION AND ORDER  23

harshness of the penalty;  (ii) the sentences imposed on other criminals in the same

jurisdiction;  and (iii) the sentences imposed for commission of the same crime in other

jurisdictions."  *Id.*, 463 U.S. at 292.

In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), the United States Supreme

Court not only rejected the petitioner's disproportionality argument on the particular facts

and law at issue, but it also backed away from the view on disproportionality articulated

in *Solem*.  There, the Court affirmed a Michigan court judgment sentencing Harmelin to a

statutory mandatory life sentence without the possibility of parole for possessing more

than 650 grams of cocaine, even though Harmelin had no other felony convictions.  The

five justices who so held disagreed as to whether the Eighth Amendment contains a

proportionality guarantee for non-capital cases.

Here, Petitioner was sentenced to a term of fixed life on his second-degree

kidnaping conviction and four prior felonies, for the protection of society because the

court found that he could not be rehabilitated.  The sentence imposed is the harshest

sentence available under the law, with the exception of the death penalty.  The Idaho

Court of Appeals has opined that "a fixed life sentence is appropriate in only two

situations: 'if the offense is so egregious that it demands an exceptionally severe measure

of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that

imprisonment until death is the only feasible means of protecting society.'"  *State v.

Helms*, 137 P.3d 466, 468 (Idaho Ct. App. 2006) (citing *State v. Eubank*, 759 P.2d 926,

929 (Idaho Ct. App. 1988)).

MEMORANDUM DECISION AND ORDER  24

The sentencing court in Petitioner's case reviewed Petitioner's extensive criminal history.  The court found that Petitioner did not have the ability to be rehabilitated and concluded that "protection of society is the overriding fact" supporting the fixed life sentence.  (State's Lodging A-4, at 82:2-16 & 83:1-9.)  The court noted multiple felony convictions, multiple batteries, repeated disciplinary offenses during incarceration, failed probation, and failed parole as facts supporting the finding that Petitioner could not be rehabilitated.  (*Id.*, at 81:5-20.)

Petitioner repeatedly threatened to kill the victim in this case, who was rescued because a stranger, Ms. O'Crowley, suddenly felt an urgent need to get out of bed and into her car at midnight and check a house she owned some distance away, and chose to travel not a direct route to the land, but a route where she expected no other cars to be traveling at that time of night.  O'Crowley had to physically stop Petitioner's efforts to take her car keys in his attempt to prevent the victim from escaping with O'Crowley.  (State's Lodging A-2, at 102:1 to 131:2.)  Other witnesses testified of similar instances with Petitioner.  (State's Lodging A-4, at 17:1-25 to 26:2; 40:1-25 to 47:1.)  A psychological evaluation and Petitioner's own testimony supported imposition of the sentence.   (State's Lodging A-4, at 82:17 to 83:2.)

Based on the state court record, the Court concludes that Petitioner has failed to show that his sentence amounts to cruel and unusual under *Solem* or *Harmelin*.  While the sentence is harsh, the record supports the state court decision that Petitioner cannot be rehabilitated, and, hence, life imprisonment without parole is necessary for the protection

of society.  For these reasons, habeas corpus relief is not warranted on Petitioner's

sentencing claim construed under the Eighth Amendment.

## CERTIFICATE OF APPEALABILITY

A habeas petitioner who has been denied relief cannot appeal unless he has first

obtained a certificate of appealability (COA).  28 U.S.C. § 2253(c)(1)(A); *Miller-El v.*

*Cockrell*, 537 U.S. 322, 336 (2003).  A COA will issue only when a petitioner has made

"a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Supreme Court has explained that, under this standard, a petitioner must show "that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further.*"  Slack v. McDaniel*, 529 U.S. 473, 484

(2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on *procedural grounds*, in addition

to showing that the petition "states a valid claim of the denial of a constitutional right," as

explained above, the petitioner must also show that reasonable jurists would find

debatable whether the court was correct in its procedural ruling.  *Slack,* 529 U.S. at 484.

When a court has dismissed the petition or claim on the *merits*, the petitioner must show

that "reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong."  *Id*. at 484.   The COA standard "requires an overview of the

claims in the habeas petition and a general assessment of their merits," but a court need

not determine that the petitioner would prevail on appeal.  *Miller-El*, 537 U.S. at 336.

MEMORANDUM DECISION AND ORDER  26

Here, it is clear that Petitioner's claims are barred by both the statute of limitations and procedural default.  Petitioner's factual grounds for equitable tolling do not come close to a showing of extraordinary circumstances, and he did not act diligently, especially during the nearly year-long time period that lapsed between the time of his last state filing and his federal Petition.  Alternatively, Petitioner's claims are subject to denial on the merits.  Petitioner produced no evidence to show that his counsel performed ineffectively at trial or on appeal, and he has not shown that his sentence is the equivalent of cruel and unusual punishment.  The state court decisions are not contrary to or an unreasonable application of governing precedent; neither were the decisions based on an unreasonable determination of the facts in light of the record.

Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further.  As a result, the Court will not grant COA.  If Petitioner wishes to appeal, he may file a notice of appeal in this court within thirty (30) days after entry of this Order, and he may file a request a COA with the Ninth Circuit Court of Appeals.

MEMORANDUM DECISION AND ORDER  27

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Dismissal (Docket No. 11) is GRANTED.  Petitioner's Petition is DISMISSED with prejudice.

IT IS FURTHER HEREBY ORDERED that a Certificate of Appealability will not be issued.  If Petitioner wishes to appeal, he may file a notice of appeal in this court within thirty (30) days after entry of this Order, and he may file a request a COA with the Ninth Circuit Court of Appeals.

DATED:  **August 31, 2009**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM DECISION AND ORDER  28